UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS R. AMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 11 C 920 |
| MICHAEL P. RANDLE, ) | |
| TERRY MCCANN, ) | Judge Castillo |
| ANTHONY RAMOS, FRANK SHAW, ) | |
| MARVIN REED, ANNA DOCKERY & ) | |
| JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas R. Ames brings this action under 42 U.S.C. § 1983 ("Section 1983") against Michael P. Randle, Terry McCann, Anthony Ramos, Frank Shaw, Marvin Reed, Anna Dockery and John Doe (collectively, "Defendants"), alleging violations of the Eighth Amendment of the Constitution. (R. 34, Am. Compl. ¶¶ 1-2.) Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 52, Defs.' Mot.) For the reasons stated below, the motion is granted in part and denied in part.

### RELEVANT FACTS

Ames has been incarcerated at Stateville Correctional Center ("Stateville") since 1993. (R. 34, Am. Compl. ¶ 8.) Defendants are various employees of the Illinois Department of Corrections ("IDOC") who allegedly were responsible for the conditions of Ames' confinement. (*Id.* ¶¶ 9-14.) Michael P. Randle was the Director of IDOC during the time relevant to this action. (*Id.* ¶ 9.) Anthony Ramos, Frank Shaw, and Terry McCann were wardens of Stateville at various times relevant to this action, (*id.* ¶¶ 10-12); McCann and Shaw were also Chief

Administrative Officers during the time relevant to Ames' complaint, (*id.* ¶ 10; R. 34-3, Ex. 3 at 2). Marvin Reed was Assistant Warden of Operations during the time relevant to this action. (R. 34, Am. Compl. ¶ 13.) Anna Dockery was Unit E Correctional Counselor II during the time relevant to this action. (*Id.* ¶ 14.) John Doe is not addressed in the body of Ames' amended complaint; however, in his initial complaint Ames identified Doe as a "Maintenance Clerk/Supervisor," (R. 1, Pl.'s Compl. 2a).

In 2008, Ames was moved to Cell 928, which is located within Unit E.[1] (R. 61, Pl.'s Opp'n at 2 n.1). Ames alleges numerous problems with his cell and Unit E, including unsanitary conditions, a lack of ventilation, and continuous lighting that interferes with sleep. (R. 34, Am. Compl. ¶¶ 15-30.) Upon moving in, Ames noticed basic problems with the condition of his new cell, including dried bodily fluids on the wall of his cell and a strong odor of ammonia from his uncleaned toilet. (*Id.* ¶ 17.) Ames alleges that throughout Unit E there is a pest infestation accompanied by filth and feces, (*id.* ¶ 18), and a complete lack of basic cleaning supplies or even garbage bags, (*id.* ¶¶ 19-21). Although Stateville issues two soap bars measuring approximately 2" x 1" x 1/2" to each inmate per week, Ames alleges that during a seven-week period in November and December 2008, he was not issued these soap bars, and therefore had nothing with which to clean himself or his cell during this time period. (*Id.* ¶¶ 19-20; R. 34-1, Ex. 1 at 4-5, ¶ 2.)

Ames additionally avers that ventilation in his unit is severely limited for several reasons. (R. 34, Am. Compl. ¶¶ 22-27.) First, the vent intended to allow fresh air to flow into his cell is covered with a steel plate. (*Id.* ¶ 23.) Moreover, in Unit E the exhaust fans are not used, (*id.* ¶

---

[1] Though it is not explicitly stated, the Court has inferred from the numerous mentions of "Unit E" and "E House" in Ames' IDOC Grievance (R. 34-1, Ex. 1) and Amended Complaint (R. 34) that Ames resides in the cellblock designated Unit E.

24), and most windows are screwed shut, (*id.* ¶ 25). Altogether the lack of ventilation causes the air quality to be poor and the air temperature to routinely exceed 90 degrees, even in the winter months. (*Id.* ¶¶ 26-27.) According to Ames, the lack of ventilation undermines his health. (*Id.* ¶ 27.)

With respect to the lighting in Unit E, Ames avers that Unit E is equipped with numerous large ceiling lights, all of which are left on 24 hours a day. (*Id.* ¶ 28; R. 34-1, Ex. 1 at 12-13 ¶ 12.) These lights are situated such that they shine directly into Ames' cell, causing him to suffer sleeping problems, which inhibit his ability to recover from his other ailments. (R. 34, Am. Compl. ¶¶ 29-30, 35.)

In an IDOC grievance, Ames also complained about the recycling of filthy, soiled bedding, (R. 34-1, Ex. 1 at 3-4 ¶ 1), missing or dilapidated, and sometimes dangerously damaged, cell furniture and fixtures, and badly peeling toxic paint, (*id.* at 5-9, ¶¶ 3-7).

Ames suffers from endocarditis (an infection of the lining of the heart), which he claims is due to the conditions of his confinement, and from which his "numerous, almost constant, fungal infections" stem. (R. 34, Am. Compl. ¶¶ 31-32.) Ames' endocarditis visibly manifests itself through discolored and splintered nails. (*Id.* ¶ 33.) He also suffers from frequent upper respiratory infections. (*Id.* ¶ 34.) Allegedly, these health problems result from and are exacerbated by unsanitary living conditions and Ames' inability to rest adequately due to the constant illumination of his cell. (*Id.* ¶ 35.)

## PROCEDURAL HISTORY

On February 9, 2009, Ames filed an Emergency Grievance ("Grievance") with McCann concerning his living conditions and the staff's conduct. (*Id.* ¶ 36; R. 34-1, Ex. 1.) When McCann failed to respond, Ames forwarded his Grievance to Dockery on March 2, 2009. (R. 34,

Am. Compl. ¶¶ 36-37.) Dockery responded to the Grievance on or about March 12, 2009, and Grievance Officer Margaret Thompson made her recommendations in a Grievance Officer's Report on April 23, 2009. (*Id.* ¶¶ 38-39; R. 34-3, Ex. 3 at 2.) With respect to Ames' complaints regarding cleaning supplies, lighting and ventilation, Thompson recommended denying the Grievance. (R. 34, Am. Compl. ¶ 39; R. 34-3, Ex. 3 at 2.) Shaw, the Chief Administrative Officer, concurred with Thompson's recommendation on May 4, 2009. (R. 34, Am. Compl. ¶ 40; R. 34-3, Ex. 3 at 2.) Ames appealed this decision to Director Randle, who denied the appeal on May 7, 2009. (R. 34-3, Ex. 3 at 2.) On August 6, 2009, Sarah Johnson, on behalf of the Administrative Review Board Office of Inmate Issues, determined that Ames' Grievance had been appropriately addressed and recommended that the Grievance be denied; Randle, as Director, concurred with Johnson's decision. (R. 34, Am. Compl. ¶ 42; R. 34-4, Ex. 4 at 2).

Having exhausted his administrative remedies, Ames filed a *pro se* complaint in this Court on February 9, 2011, (R. 1, Compl.), and sought appointment of counsel, (R. 4, Mot. App't Counsel). This Court granted Ames' motion for appointment of counsel, (R. 6, Op. at 2), and on February 29, 2012, with the assistance of counsel, Ames filed an amended complaint. (R. 34, Am. Compl.) In his amended complaint, Ames presents two claims against Defendants in their individual (Count I) and official capacities (Count II), alleging that Defendants have been deliberately indifferent to the conditions of his confinement at Stateville, in violation of his Eighth Amendment rights. (*Id.* ¶¶ 50-66.)

Defendants filed a motion to dismiss Ames' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 17, 2012. (R. 52, Defs.' Mot.) Defendants raise three principal arguments in the memorandum supporting their motion to dismiss. (R. 53, Defs.' Mem.) Defendants first argue that Ames' amended complaint fails to state a claim that the

conditions of his confinement are unconstitutional. (*Id.* at 8.) Further, they argue that Ames fails to plead sufficient personal involvement for them to be liable for the conditions of his confinement. (*Id.* at 5.) Lastly, Defendants argue that they are not amenable to suit under Section 1983, and that they are otherwise immune from suit under the Eleventh Amendment. (*Id.* at 10.)

On July 20, 2012, Ames filed an opposition to Defendants' motion to dismiss. (R. 61, Pl.'s Opp'n). Defendants filed their reply on August 10, 2012. (R. 64, Defs.' Reply.)

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff by accepting as true all of the well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.) "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). After all, "the plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* Therefore, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

## ANALYSIS

**I. Whether Ames' allegations are sufficient to state a claim for relief**

In both Counts I and II, Ames brings Section 1983 claims against Defendants alleging that they violated his Eighth Amendment rights by depriving him of the minimal civilized measure of life's necessities. (R. 34, Am. Compl. ¶¶ 50-66.) In Count I, Ames brings suit against Defendants in their individual capacities, (*id.* ¶¶ 50-57), and in Count II, Ames brings suit against Defendants in their official capacities, (*id.* ¶¶ 58-66). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not itself provide substantive rights; rather, it is a vehicle for vindicating federal rights conferred elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Section 1983 allows suit against any person who, acting under color of state law, deprives a prisoner of his Eighth Amendment rights. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).

6

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In proscribing "cruel and unusual punishments," the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) ("When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). As the Supreme Court has previously explained,

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment . . . .

*DeShaney*, 489 U.S. at 199-200 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–104 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982)).

"An Eighth Amendment claim has two components—objective and subjective." *Delaney v. Detella*, 256 F.3d 679, 683 (7th Cir. 2001); *see also Farmer*, 511 U.S. at 834. First, to satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious,'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), such that a prison official's act or omission "result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Therefore, to establish a claim based on inhumane conditions of confinement, "extreme deprivations are required[.]" *Henderson v. Sheehan*, 196 F.3d 839, 845 (7th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Second, as the Supreme Court explained in *Farmer*, the subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson*, 501 U.S. at 297). When an inmate complains about the inhumane conditions of his confinement, that state of mind is one of "deliberate indifference" to the inmate's health or safety. *Id.*; *see also Wilson*, 501 U.S. at 303. The deliberate indifference standard is met when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Under the test adopted in *Farmer*, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. At a minimum, "an inmate must allege '*actual* knowledge of *impending* harm *easily* preventable.'" *Delaney*, 256 F.3d at 683 (emphasis in original) (quoting *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992)). In essence, to state a valid constitutional claim under the Eighth Amendment for inhumane conditions of confinement, Ames must allege that the conditions at Stateville constituted an objectively sufficiently serious harm and that Defendants were deliberately indifferent to his situation.

In both Counts I and II, Ames alleges that Defendants failed to provide him with the minimal civilized measures of life's necessities in violation of the Eighth Amendment. (R. 34, Am. Compl. ¶¶ 50-66.) As an initial matter, Defendants mischaracterize Ames' allegations and argue that "[i]n order to state a claim under the Eighth Amendment for lack of medical treatment or denial of medical care, a prisoner must show acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs." (R. 53, Defs.' Mem. at 3.) Ames did not make a claim for lack of medical treatment or denial of medical care. Rather, his action concerns the allegedly unconstitutional conditions of his confinement. (R. 34, Am. Compl. ¶¶ 15-49.) Undeterred, Defendants argue that Ames fails to allege sufficient facts to support both components of *Farmer's* two-part test. The Court addresses each argument in turn.

### A. Whether Ames adequately pleads unconstitutional conditions of confinement

Ames alleges numerous deficiencies in the conditions of his confinement that have caused and continue to cause harm to his health and well-being. (R. 34, Am. Compl. ¶¶ 15-35.) Specifically, Ames alleges that his cell walls contain the dried bodily fluids of others, (*id.* ¶ 17), that the cellhouse is infested with insects, mice, and birds, (*id.* ¶ 18), that he is not provided with cleaning products to clean the filth, (*id.* ¶ 19), that there is a lack of proper ventilation which causes his cell to reach 90 degrees or higher and also undermines his health, (*id.* ¶¶ 22-27), and that he is subjected to constant lighting and suffers grave sleeping problems as a result, (*id.* ¶¶ 28-30). Ames further alleges that he suffers from fungal infections, which have resulted in an infection in the lining of his heart, and that he has frequent respiratory infections as a result of his unsanitary and filthy living conditions. (*Id.* ¶¶ 31-35.)

Defendants argue that these conditions are not so objectively harsh as to give rise to a claim of cruel and unusual punishment. Specifically, Defendants assert, "Plaintiff does not allege that he was denied food, clothing, shelter, or personal safety. Rather, he alleges that he was not able to clean his cell with cleaning materials as often as he liked, the air was stale, there were some insects and birds in the prison, and he was bothered by the lighting at night." (R. 53, Defs.' Mem. at 8; R. 64, Defs.' Reply at 3.) Such hyperbole is inappropriate; on a motion to dismiss, the Court must draw all reasonable inferences in favor of Ames, not Defendants.

Despite Defendants' argument to the contrary, the Court has little difficulty in concluding that the alleged conditions are plainly serious enough to satisfy the first prong of the two-step inquiry.

Under the Eighth Amendment, prisoners are entitled to "the minimal civilized measure of life's necessities," including shelter. *Farmer*, 511 U.S. at 832-34. The right to adequate shelter encompasses the right to hygiene items, *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) ("Under the amendment, life's necessities include shelter and heat, *Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997), as well as hygiene items."), reasonably adequate sanitation, *id.* (noting that "[a] lack of . . . sanitation can violate the Eighth Amendment"), and adequate and healthy ventilation, *Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (recognizing that "a constitutional right to adequate ventilation exists"). The Seventh Circuit also recognizes that inmates have the "right to be free from extreme hot and cold temperatures." *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986); *see also Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1981) ("A state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing)".) Adequate lighting is also another of the "fundamental attributes of 'adequate shelter' required by the Eighth Amendment," and constant illumination may be the basis for a viable Eight Amendment claim. *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985)) (denying summary judgment to defendants where the plaintiff "alleged that large florescent lights directly in front of and behind his cell shone into his cell 24 hours a day," such that his cell was constantly illuminated, which caused him "grave sleeping problems" in addition to other mental and psychological problems); *see also Ward v. McBride*, 41 F. App'x 893, 894 (7th Cir. 2002) (noting that prisoner "might have a valid § 1983 claim if, as he claims, he suffered psychological harm from being held for weeks in a cold,

perpetually lighted cell"); *Whitford v. Boglino*, No. 97-3715, 202 F.3d 276 (7th Cir. 1999) (unpublished) (discussing inmate's complaint about the constant illumination of his cell and recognizing that other circuits "have focused on whether the constant light deprived the inmate of sleep or caused mental or psychological problems"); *Horton v. Snyder*, No. 01-614-CJP, 2007 WL 685947 at *1 (S.D. Ill. Mar. 6, 2007) (allowing plaintiff's claims about constant bed checks that led to constant illumination to proceed to trial). Finally, allegations of a prolonged exposure to pest infestations may also state a claim under the Eighth Amendment. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

If the conditions described by Ames do indeed exist, and they do indeed cause him harm by exacerbating his endocarditis, or by causing frequent upper respiratory infections and sleep deprivation that affects his health, then Ames has sufficiently stated a claim for relief that is plausible on its face. *See Sanchez v. McCann*, No. 09 C 2289, 2010 WL 1408917, at *3 (N.D. Ill. Apr. 2, 2010) (finding that Stateville inmate sufficiently stated an Eighth Amendment claim for unsanitary living conditions where inmate alleged that he was subjected to improper trash disposal, unsanitary toilet facilities, and a lack of cleaning supplies); *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, at * 4 (N.D. Ill. Sept. 8, 2009) (holding that Stateville inmate's allegations that roaches crawled on him at night and vermin ate his property, that his cell was filthy, and that he was only provided two bars of soap per week with which to clean his cell, which caused him to break out into a rash, were sufficient to state Eighth Amendment claims); *Williams v. Berge*, No. 02-C-0010-C, 2002 WL 32350026, at *4 (W.D. Wis. Apr. 30, 2002) (inmate's allegations that his cell was illuminated 24 hours per day with bed checks every 30 minutes and that he was subjected to extreme cell temperatures stated Eighth Amendment claims); *see also White v. Monohan*, 326 F. App'x 385, 386-87 (7th Cir. 2009) (vacating district

court's dismissal of a civilly committed plaintiff's conditions of confinement complaint and holding that the plaintiff had stated a claim based on allegations of poisoned drinking water, extreme cell temperatures, poor ventilation, and an insect infestation); *Mejia v. McCann*, No. 08 C 4534, 2010 WL 5149273, at *6 (N.D. Ill. Dec. 10, 2010) (denying summary judgment to defendants on Stateville prisoner's claim that he was denied cleaning supplies, even after he complained about filthy and inhumane living conditions).

Seeking to avoid this result, Defendants rely on *Dixon* to argue that Plaintiff allegations are conclusory and lack the backing of medical or scientific sources. (R. 53, Defs.' Mem. at 9.) In making this argument, however, Defendants ignore the fact that *Dixon* was decided on a motion for summary judgment. 114 F.3d at 641. Whether there is evidence to support Ames' allegations is not an issue to be decided on a motion to dismiss, and is left for another day.

### B. Whether Ames adequately pleads that Defendants were deliberately indifferent

To state an Eighth Amendment claim, Ames must also allege that Defendants were deliberately indifferent. Under the subjective component of *Farmer*'s test, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. at 842. Defendants argue that "[t]here are no allegations that any of these Defendants had direct personal involvement in causing any of the alleged deprivations cited in Plaintiff's Amended Complaint," (R. 53, Defs.' Mem. at 6), thereby suggesting that Ames has not sufficiently alleged that Defendants were deliberately indifferent. In making this argument, however, Defendants simply ignore the allegations in Ames' complaint related to their personal involvement. Specifically, Ames alleges that he repeatedly advised McCann about Stateville's detrimental living conditions, and that

McCann did not make an effort to remedy the conditions, (R. 34, Am. Compl. ¶¶ 43-44); that he informed Dockery about the intolerable living conditions, and that Dockery did not make an effort to remedy the conditions, (*id.* ¶¶ 45-46); and that he discussed the intolerable living conditions with Shaw, Ramos, and Reed, each of whom also failed to make any efforts to remedy the living conditions, (*id.* ¶¶ 47-49). Ames alleges that none of these conversations resulted in action by any of the Defendants, (*id.* ¶¶ 43-49); further, Ames ascribes to Shaw a flippant response that, if true, indicates a disturbing lack of concern for those in his charge, (*id.* ¶ 47). Such allegations are sufficient to satisfy the subjective component of an Eighth Amendment claim against Defendants McCann, Dockery,[2] Shaw, Ramos, and Reed. *See Delaney*, 256 F.3d at 686 (inmate's allegations that he repeatedly complained to each of the named defendants and filed a grievance, but that the named defendants did not act was sufficient to satisfy the subjective element of an Eighth Amendment claim). With respect to John Doe, however, Ames has not put forth any allegations about his involvement in the alleged constitutional deprivation, and therefore does not properly allege a claim against John Doe.

With respect to Defendant Randle, Ames alleges only that Randle "was ultimately responsible for overall prison conditions and grievances of inmates." (R. 34, Am. Compl. ¶ 9.)

---

[2] Relying on *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007), Defendants also argue that Dockery cannot be liable because her role was limited to the denial of Ames' Grievance. (R. 53, Defs.' Mem. at 10.) In *George*, the Seventh Circuit stated that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." 507 F.3d at 609. *George*, however, is immaterial here because Ames does not argue that Dockery is liable solely for denying his Grievance. Rather, Ames alleges that Dockery was in a position to ameliorate his conditions of confinement and failed to do so. (R. 34, Am. Compl. ¶¶ 45-46.) Although "officials do not act with 'deliberate indifference' if they are helpless to correct the protested conditions," Dockery does not attempt to argue that she was powerless to correct the conditions. *Dixon*, 114 F.3d at 645 (citing *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994)). Since Ames has pleaded facts that could plausibly support a finding that Dockery had the requisite knowledge of the deprivation Ames was subjected to and did not act on it, the Court declines to dismiss her from this suit at this time.

Defendants argue that any theory of liability arising under the doctrine of *respondeat superior* must fail. (R. 53, Defs.' Mem. at 6.) It is well-established that the doctrine of *respondeat superior*, pursuant to which a supervisory official may be held liable for the conduct of his subordinates, does not apply to actions under § 1983; therefore, to be individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F. 3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* (quoting *Chavez*, 251 F.3d at 652). Thus, where a supervisor knows about the conduct and facilitates it, approves it, condones it, or turns a blind eye, he or she may be held liable. *Chavez*, 251 F.3d at 651. Here, however, Ames does not allege that Randle was personally involved in, or actually knew about, the conditions of Ames' confinement, or that Randle was even aware of any policies in place regarding the conditions of his confinement. Accordingly, Ames has not properly alleged an Eighth Amendment claim against Randle.

Therefore, the Court dismisses Ames' Eighth Amendment claims against Defendants Doe and Randle, but declines to dismiss his claims against Defendants McCann, Dockery, Shaw, Ramos, and Reed in their personal capacities.

## II.    Whether Ames' claim against Defendants in their official capacities is barred by Section 1983 or the Eleventh Amendment

In Count II, Ames brings a claim against Defendants in their official capacities. (R. 34, Am. Compl. ¶¶ 58-66.) In his request for relief, Ames seeks, among other things, injunctive relief and monetary damages. (R. 34, Am. Compl. at 9.) Defendants argue that the action against them in their official capacities is really an action against the State of Illinois, which is not a person subject to suit under § 1983, and that the Eleventh Amendment otherwise bars

Ames' action. (R. 53, Defs.' Mem. at 10.) At the outset, the Court notes that any constitutional problem that may exist in Ames' complaint is subordinate to any statutory deficiency. *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). The Seventh Circuit instructs that "[s]uits against states for damages should be resolved on the ground that they do not come within § 1983, not because states are protected by the Eleventh Amendment." *Id.* (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)).

It is well-established that suits against government officials in their official capacity are suits against the governmental entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). It is also well-settled that "neither a State nor its officials acting in their official capacities are 'persons' [subject to an action for damages] under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, to the extent Ames seeks damages from Defendants in their official capacity, § 1983 does not permit such an action and his action is therefore barred.

This is not to say, however, that Ames cannot bring an action that seeks injunctive relief against a state official in his or her official capacity. Section 1983 permits official-capacity suits that seek injunctive relief against state officials. *Williams*, 336 F.3d at 581; *Will*, 491 U.S. at 71 n.10 (1989). In *Will*, the Supreme Court made clear that "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167, n.14; *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). Therefore, to the extent Ames seeks injunctive relief against Defendants in their official capacities, § 1983 does not bar him from bringing such an action.

Nor does the Eleventh Amendment bar Ames' claim for injunctive relief, as Defendants

contend. Under *Ex parte Young*, 209 U.S. 123 (1908), official-capacity suits against state officials seeking prospective relief are not barred by the Eleventh Amendment. *Williams*, 336 F.3d at 581; *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (In a § 1983 action against a state official, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."). The Eleventh Amendment to the Constitution provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the language of the Eleventh Amendment does not explicitly bar suits against a State by its own citizens, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman*, 415 U.S. at 63. If properly raised, the Eleventh Amendment bars official-capacity suits in federal court against a state, state agencies, or state officials. *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (citing *Edelman*, 415 U.S. at 663).

As the Seventh Circuit recently explained, there are three exceptions to the Eleventh Amendment's bar: (1) where Congress abrogates a state's immunity from suit; (2) where the state itself consents to suit in federal court; and (3) under the doctrine announced in *Ex parte Young*, 209 U.S. at 159-60, by which a plaintiff may sue "state officials seeking prospective equitable relief for ongoing violations of federal law." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 370 (quoting *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997)). Here, Ames asserts that "the sole purpose for including the individuals as defendants in their 'official capacities' is to enable [him] to seek injunctive relief." (R. 61, Pl.'s Opp'n at 11.) In other words, Ames asserts

that his suit is not barred by the *Ex parte Young* doctrine.

To determine whether the *Ex parte Young* doctrine avoids the Eleventh Amendment's bar to suits against a state, the Court "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of law and seeks relief properly characterized as prospective." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 371 (quoting *Verizon Maryland Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The first part of the inquiry, whether Ames alleges an ongoing violation of federal law, is clearly satisfied. Ames names individual state officials as Defendants in this action, and he alleges that those state officials have failed to provide him with the minimal civilized measures of life's necessities, in violation of the Eighth Amendment. *Helling*, 509 U.S. at 31 ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The second part of the inquiry, whether Ames seeks prospective relief, is also satisfied as Ames makes clear in his complaint that he seeks "a permanent injunction enjoining Defendants" from continuing to engage in the allegedly unlawful conduct. (R. 34, Am. Compl. at 9.) Therefore, Ames' official-capacity suit against Defendants seeking prospective relief is not barred by the Eleventh Amendment, as it falls within the *Ex parte Young* doctrine.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 52) is GRANTED in part and DENIED in part. Specifically, Defendants John Doe and Michael P. Randle are dismissed from Count I. Furthermore, Ames' claims against Defendants in their official capacities in Count II are dismissed to the extent Ames seeks to recover monetary damages. All other Defendants and claims are retained. In light of this opinion, the parties are encouraged to reconsider their settlement positions and exhaust all settlement discussions. The parties shall

17

appear for a status hearing on April 10, 2013, at 9:45 a.m. to set a firm litigation schedule, if this lawsuit cannot be settled.

ENTERED: /s/ Ruben Castillo
Ruben Castillo
**United States District Judge**

**Date:** March 18, 2013